■ BATAVIA LODGE NO. 196, LOYAL ORDER OF MOOSE, et al., Petitioners, v. NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents.— Determination and order of Commissioner, as affirmed by order of appeal board

808

modified, in accordance with memorandum, and as modified confirmed, without costs. Memorandum: Petitioner, Batavia Lodge No. 196, Loyal Order of Moose, through arrangements made by one of its members, permitted its club premises to be used for a fashion show. Several tickets to the show were sold to blacks and several blacks attended the show which was held in the club banquet room. Across the hall from this room was a barroom, behind double swinging doors on which were signs reading "Moose Members Only". On observing white persons going to the bar and obtaining alcoholic drinks, some of the black persons entered the bar seeking to purchase such drinks, and they were refused service. For that reason the seven respondents herein left the club and thereafter filed with the Commissioner of Human Rights complaints of discrimination against them by the club and its officials. The Commissioner conducted a hearing on the complaints and made findings of fact (1) that on the occasion of the show the club was a place of public accommodation within the meaning of the Human Rights Law (Executive Law, § 292, subd. 9); (2) that statements made to respondents by petitioner's steward indicated to them that their patronage was unwelcome and objectionable to the club because of their race and color; (3) that white persons were served at the bar on this occasion although they were not members or guests of members; and (4) that as a result of this discrimination respondents were aggrieved, humiliated and suffered mental anguish. Pursuant to those findings, the Commissioner ordered petitioner club, "unless otherwise in violation of law", to cease and desist from refusing or withholding service to respondents or other persons because of their race, color or creed and to make available to them, "unless otherwise in violation of law", the full and equal use of the services, accommodations, privileges and facilities of the club without regard to race, color or creed; and further ordered petitioners to pay to each respondent within 30 days the sum of $250 as his damages by reason of the above refusal of service. The Appeal Board affirmed the Commissioner's findings and order. Under section 298 of the Executive Law petitioners seek reversal of the order of the Appeal Board. Although petitioner is a private club, on the occasion in question it permitted its facilities to be used as a place of public accommodation. Tickets for the show were sold to the general public without restriction and without limitation thereon as to the facilities of the club which would be opened to the public during the show. The evidence shows that there was a free flow of guests from the banquet hall to the barroom, with no attempt to restrict any except blacks. There was ample evidence from which the Commissioner could conclude that during the show the club was a place of public accommodation. Under section 298 of the Executive Law the determination of the Commissioner "shall be conclusive if supported by sufficient evidence on the record considered as a whole". The evidence in this record of discrimination against respondents was substantial and the finding thereof may not, therefore, be disturbed by the courts (*Matter of Moskal v. State of New York, Executive Dept., Div. of Human Rights*, 36 A D 2d 46). Finding No. 17, however, is not supported by the record. Finding No. 18 also was improperly made, because it was based on testimony which should have been excluded. These findings, therefore, should be stricken; but upon the record as a whole, these errors had little significance in the Commissioner's determination, and we deem them not to be prejudicial. Petitioner contends that four of the respondents, to wit, Woods, Bethel, Williams and Jackson, are not aggrieved persons within the meaning of the Human Rights Law because they did not attempt to obtain drinks at the bar, and hence were not refused service. Subdivision 2 of section 296 of the Executive

Law makes unlawful any discriminatory practice showing that the patronage of any person is unwelcome or objectionable because of his race, color or creed. There is substantial evidence in the record that petitioner violated this provision with respect to these four respondents, and so they are aggrieved within the meaning of section 297 of the Executive Law (see *National Organization for Women* v. *State Div. of Human Rights,* 40 A D 2d 107, 111). Petitioners further contend that the complaint of respondent Roberson should have been dismissed because he did not appear at the hearing and testify, and, therefore, petitioners were denied the right to cross-examine him. Section 297 (subd. 4, par. a) of the Executive Law, which authorizes a respondent to cross-examine a complainant, also provides, "With the consent of the division, the case in support of the complainant may be presented solely by his attorney" and that "The complainant and all parties shall be allowed to present testimony in person or by counsel and cross examine witnesses". There is no requirement that complainant appear in person and testify, although failure to do so may well bear on the Commissioner's determination. A respondent, of course, may cross-examine all witnesses produced to support the complaint, and that was done in this instance. Since there was substantial evidence of the alleged discrimination, the complaint was properly sustained by the Commissioner. Petitioner contends that the order under review requires it to violate subdivision 8 of section 106 of the Alcoholic Beverage Control Law which provides that a club license to sell alcoholic beverages on the premises authorizes such sales to club members and their guests; and that the order would require it to make sales in excess of the club's right under its license. The order carefully provides that, "unless otherwise in violation of law", petitioner shall sell beverages without discrimination. If blacks are guests of a member, as petitioner's secretary testified that those were who were attending the fashion show, sales to them would not appear to violate the law. But if sales to respondents would have violated the law, so also would the sales made at the time to certain whites. We do not read the order as requiring petitioner to open its private club, when operated solely as such, to the general public. The order merely requires petitioner in the operation of its club to act evenhandedly, without discrimination and within the law. Finally, petitioners contend that the record does not support an award of compensatory damages to respondents. We agree. There is evidence that the respondents were angered, embarrassed and humiliated by the incident in different degrees and some had headaches thereafter; but there is no evidence that any respondent was put to expense or lost earnings or suffered any measurable damage by reason of the discrimination. The indiscriminate award of $250 to each complainant was clearly punitive and not compensatory. Upon this record it was error, therefore, to award damages to the respondents (*Matter of State Div. of Human Rights* v. *Luppino,* 29 N Y 2d 558, affg. 35 A D 2d 107; *State Div. of Human Rights* v. *Janica,* 37 A D 2d 444; *State Div. of Human Rights* v. *Stern,* 37 A D 2d 441, 443; *Matter of Moskal* v. *State of New York, Executive Dept., Div. of Human Rights,* 36 A D 2d 46, 49, *supra*; and, see, *State Comm. of Human Rights* v. *Speer,* 29 N Y 2d 555, revg. 35 A D 2d 107, 112). All concur, except Marsh, J. P., and Cardamone, J., who dissent in part and vote to confirm, in the following memorandum: We concur with the majority determination except insofar as it reversed the Commissioner's award of compensatory damages for mental anguish in each complainant's case. The courts have recognized the Commissioner's statutory authority to award compensatory damages. However, proof of discrimination alone is not sufficient to sustain an award of com-

810

pensatory damages for mental anguish. (*Matter of State Div. of Human Rights* v. *Luppino*, 29 N Y 2d 558, affg. 35 A D 2d 107; *State Div. of Human Rights* v. *Janica*, 37 A D 2d 444; *Matter of Moskal* v. *State of New York, Executive Dept., Div. of Human Rights*, 36 A D 2d 46.) The Commissioner must have evidence before him as would be sufficient in a common-law action to warrant the granting of such awards (*State Comm. for Human Rights* v. *Speer*, 29 N Y 2d 555, revg. 35 A D 2d 107 on dissenting opn. p. 112). The problem is one of proof. The general standard of proof required to support a claim of mental anguish is that there be some guarantee of the genuineness of the claim itself (*Ferrara* v. *Galluchio*, 5 N Y 2d 16; cf. Prosser, Torts [4th ed.], § 54, p. 330). While the proof of genuineness may consist of medical testimony, a rigorous insistence on the exclusiveness of such testimony would emasculate the statute since such proof is not practically or economically available in the majority of human rights cases (see *Italiano* v. *New York State, Executive Dept., Div. of Human Rights*, 36 A D 2d 1009). Genuineness, however, may also be guaranteed by reference to the circumstances of the case (*Ferrara* v. *Galluchio, supra*; *Halio* v. *Lurie*, 15 A D 2d 62, 67). Adequate common-law proof sufficient to sustain an award for mental anguish must include: (1) a showing of intentional discrimination; (2) credible testimony with respect to the claimed mental anguish; (3) corroboration, either by competent medical proof or by the circumstances of the case which afford some guarantee of the genuineness of a claim for mental anguish. Whether the claim is corroborated by medical testimony or by the circumstances of the case, it must be sufficient to satisfy the Commissioner that the mental anguish does in fact exist, and that it was caused by the act of discrimination. Finally, to further assure the genuineness of the claim in cases where there is no medical proof, the Commissioner should be further satisfied that a reasonable person of average sensibilities could fairly be expected to suffer mental anguish from the incident. The fact that the damages are somewhat speculative and evanescent should not serve to limit the legislative authority vested in the Commissioner to make awards under the Human Rights Law, absent an arbitrary or capricious exercise of his discretionary power. The danger of an abuse of discretion resulting in an extravagant award is safeguarded by the power of review vested in the State Human Rights Appeal Board (Human Rights Law, § 297-a [Executive Law, art. 15]) and ultimately in the courts (Human Rights Law, § 298). We conclude that there was such common-law proof sufficient to sustain an award of compensatory damages to the complainants in these cases. All the members of the court concur in affirming the finding of intentional discrimination; the Commissioner, who had the advantage of observing the complainant's demeanor and manner, is in the best position to judge credibility; and while there is no medical proof we find that the circumstances of this case afford some guarantee of the genuineness of the claim for mental anguish. In respect to this, the record establishes that the fashion show at which complainants were unlawfully discriminated was attended by about 200 persons. Some of the hostesses were black, some white. Blacks and whites of both sexes were seated at one table. However, when the group went to the bar to be served, the whites were able to buy a drink. The blacks, without exception, were refused. At first, the excuse was offered by respondent that complainants could not be served because they were not members of the club. Later, however, when it became evident that whites who were not members were being served, no excuse was offered. Typical of the proof in the record before the Commissioner is the following: Complainant, Mrs. Smith,

attempted to order a drink. She was refused by the bartender who ignored her; or when complainant, Mrs. Bethel, asked the steward why she could not be served, he told her that she would have to request Mrs. Ross (a white woman) to buy it and bring it to her; later, when Mrs. Smith attempted to go back to the bar, the steward told her "to get out of there because she wasn't going to get anything"; some of the complainants were told by the steward "we can't serve you"; "we aren't going to serve you"; and finally told by him when the blacks began to leave the premises, "I don't care. If you want a riot you can have one just like Chicago. We don't care. If that's what you are looking for . . . Go back where you belong. Get out of here and go over there where you belong." As a result of these acts of discrimination, a number of complainants testified that they "felt hurt, nervous and tense and could not sleep right away"; another "had a headache and took aspirin"; one stopped being a hostess for Beeline Fashion as a result of the incident; one testified that she was embarrassed and became nervous, could not sleep for two nights and went to a doctor for headaches, had to take medication to sleep; others testified that they were "angry", "felt awful and cannot forget the incident", "not able to sleep well", "had headaches". It seems evident that the Commissioner had ample proof before him to guarantee the genuineness of the claim. The acts of discrimination causing mental anguish are clearly established by the evidence and we would hold that considering the record as a whole there exists sufficient evidence that a reasonable person of average sensibilities could have been expected to suffer mental anguish from the incident. Accordingly, we dissent and vote to confirm the award of compensatory damages. (Review of determination finding discrimination in refusing privileges of lodge.) Present — Marsh, J. P., Witmer, Cardamone, Simons and Henry, JJ.