James Thomas **PATTERSON**,
Sr., Plaintiff,

v.

Lawrence L. **AIKEN**, et al., **Defendants.**

Civ. A. No. C85–3501A.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 27, 1986.

James Thomas Patterson, Sr., Riverdale, Ga., pro se.

Jeffrey R. Nickerson, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This action is before the court on the motion of certain of the defendants for attorney's fees pursuant to Rule 11 of the *Federal Rules of Civil Procedure.* In a prior order issued by this court, plaintiff's complaint was dismissed on the grounds that it was frivolous. The counts of the complaint subject to this motion are Count III, in which plaintiff alleged a violation of the antitrust laws by the moving defendants, which this court dismissed because plaintiff had failed to allege that he had suffered any "antitrust injury" as defined by case law; Count V of the complaint, as against these defendants, which alleged obstruction of justice and was dismissed by this court on grounds of *res judicata* and collateral estoppel, since everything alleged in that count was or could have been raised in plaintiff's prior lawsuits against these defendants; and Count VI of the com-

plaint, which alleged that certain of these defendants induced plaintiff's attorneys to breach their contract with him, and the court dismissed that count because it was non-diverse.

The defendants predicate their motion for attorney's fees on three legal arguments: first, that fees are appropriate under Rule 11 of the *Federal Rules of Civil Procedure;* second, that fees are appropriate pursuant to 28 U.S.C. § 1927 governing willfulness or bad faith in continuing litigation; and third, on the court's inherent equitable powers. The court finds that neither of the latter two prongs of defendants' motion are well founded, since no evidence was brought forward at the evidentiary hearing held on this motion of willfulness or bad faith on the part of the plaintiff. That means that if sanctions are appropriate, they may be imposed only under Rule 11 of the *Federal Rules of Civil Procedure.* That rule provides in pertinent part as follows:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the

> reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Therefore, Rule 11 imposes upon both attorneys and *pro se* litigants the burden of investigating both the factual and legal bases for the claims they assert in papers addressed to the court, and of ascertaining that there is a reasonable basis for maintaining the action or position taken in the papers. The language of Rule 11 represents a change from the prior law, which was that the attorney or party need only satisfy the court that he had a subjective good faith belief that his position was justifiable.

> The new language stresses the need for some pre-filing inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances.... This standard is more stringent that the original good-faith formula....

Advisory Committee Notes to Rule 11. In applying this rule, the court is not to exercise hindsight with respect to what the attorney or party should have known, but instead is to "test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion or other paper was submitted." *Id.* Because the plaintiff herein is a *pro se* litigant, it is relevant to note that the Advisory Committee has indicated that although pro se litigants are subject to Rule 11, "... the court has sufficient discretion to take account of the special circumstances that often arise in *pro se* situations." The notes continue:

> ... [T]he court should take account of the state of the attorney's or party's actual or presumed knowledge when the pleading or other paper was signed. Thus, for example, when a party is not represented by counsel, the absence of legal advice is an appropriate factor to be considered.

Once it is determined that a pleading or other paper has been signed in violation of

Rule 11, the court must then determine the appropriate sanction to be imposed. Consideration of the appropriateness of any given sanction depends upon the court's particular orientation toward the purposes of Rule 11. The Advisory Committee Notes list only one purpose for Rule 11, which is to discourage dilatory or abusive tactics, and to lessen frivolous claims or defenses—in other words, a deterrence rationale. There are at least two other potential functions served by Rule 11, however. These are punishment of the offending party, and a cost-shift so that the innocent party does not bear the cost of the offending party's violation. *See, e.g., An Empirical Study of Rule 11 Sanctions,* Federal Judicial Center, 1985, p. 29.

Those courts which have adopted a punishment rationale also tend to focus upon such issues as good faith, bad faith, and willfulness in determining the appropriate sanction. *Id.* at 25–28. The problem with a punishment rationale, from this court's perspective, is that it requires an inquiry into the state of mind of the person who violated the rule; in other words, a determination of the person's subjective good or bad faith. Rule 11 was amended in 1983 specifically because the drafters wanted to avoid the necessity of the court making such a subjective inquiry. In substituting the reasonable inquiry language, the drafters injected a measure of objectivity and empirical verifiability into Rule 11 inquiries. *See, e.g., Mohammed v. Union Carbide Corp.,* 606 F.Supp. 252 (E.D.Mich. 1985). In *Mohammed,* the court noted that unlike subjective good faith, where the court was limited to believing or disbelieving the testimony of the person who signed the pleading, if the court is determining whether an inquiry was "reasonable" the court may look to the facts surrounding what actions were taken by the person and determining whether that constituted reasonable inquiry under all the circumstances. While not mathematically precise, the system at least affords some degree of consistency in imposing Rule 11 sanctions. A punishment-oriented inquiry, however, does not, and for that reason this court finds it inappropriate as a rationale for the imposition of sanctions.

The most commonly cited rationale for the imposition of Rule 11 sanctions is to deter future violations by others. *See, e.g., An Empirical Study of Rule 11 Sanctions,* Federal Judicial Center, *supra.* It appears to the court that the deterrence rationale, although clearly relevant for the court's inquiry, often leads courts to confuse the issues of (1) whether Rule 11 has been violated, and (2) what sanctions should be imposed if the rule was violated. For example, in *Cavallary v. Lakewood Sky Diving Center,* 623 F.Supp. 242 (E.D. N.Y.1985), the court concluded that although the plaintiff, who was *pro se,* had violated Rule 11, no sanction would be imposed because the plaintiff did not have legal expertise. The fact that plaintiff did not have legal expertise should have been considered in determining whether the inquiry conducted was reasonable. If it was found not to be, there is no reason why this factor should count again in determining whether a sanction should be imposed. Similarly, in *Bigalk v. Federal Land Bank Association,* 107 F.R.D. 210 (D.Minn. 1985), the court declined to award sanctions because the plaintiffs were "sincere." A true deterrence rationale is one which informs persons who may be in a position to violate the rule that a price will be paid for doing so. Cases such as *Pawlowske v. Chrysler Corporation,* 623 F.Supp. 569 (N.D.Ill.1985) fail to serve that purpose. In *Pawlowske,* the court concluded that although the plaintiff had violated Rule 11 and had filed an action in the face of clear statutory authority to the contrary, the court would determine the appropriate amount of the sanction based upon the actual amount of defendant's attorney's fees as compared to the plaintiff's financial condition. In *Haimbaugh v. City and County of San Francisco,* 591 F.Supp. 1573 (N.D.Cal.1984), the court concluded that although plaintiff had filed a federal lawsuit without any support whatsoever in the law, given his education the court would merely award the defendants a to-

ken $50.00 in attorney's fees. The foregoing cases illustrate not only the confusion between determining whether Rule 11 has been violated by a *pro se* litigant and, if so, the sanction to impose; they also seem to the court to miss the point behind a deterrence rationale. If people know that action "A" will result in adverse consequence "B," it will make them less likely to take action "A" in the first place. That is the stated purpose of Rule 11. For that reason, the court finds that, in ordinary cases where there has been a violation of Rule 11, the most appropriate sanction to effectuate the deterrence goal is a one-for-one cost-shift of reasonable fees incurred as a result of the violation of Rule 11.

Many cases have used a cost-shifting rationale and have directed the person injured by the Rule 11 violation to document the actual amount of attorney's fees and expenses incurred as a result of the violation. *Blackwell v. Board of Offender Rehabilitation,* 609 F.Supp. 772 (S.D.Ga.1985) (Alaimo, J.); *Mohammed v. Union Carbide,* 606 F.Supp. 252 (E.D.Mich.1985); *Booker v. City of Atlanta,* 586 F.Supp. 340 (N.D.Ga.1984) (Vining, J.); *Sunn v. Dean,* 597 F.Supp. 79 (N.D.Ga.1984). These cases stand for the proposition that those courts felt that the appropriate sanction to impose against the person violating Rule 11 was to compensate the other side for the actual attorney's fees expended. This assures in most cases that the sanction is proportional to the wrong and that increased expenses of litigating with a careless, unskillful or unscrupulous adversary will not become a bludgeon either to force nuisance value settlements or to deter resort to courts for vindication of well-established rights. Absent extraordinary circumstances, this court believes that an award of attorney's fees is the appropriate penalty. It serves the purpose of deterrence, as well, because it is a clear rule capable of consistent application. It does not constitute a license to run up fees against a violating party, however, because the court will apply the traditional factors utilized in determining the reasonableness of the fees requested. *See,*

*e.g., Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).

Against the foregoing background of law relating to Rule 11, the court will determine first whether plaintiff Patterson violated Rule 11 in filing the complaint in this action, and if so, the court will determine the appropriate sanction. The court finds that in filing Count VI of this complaint, plaintiff Patterson did not violate Rule 11, since that count does state a claim for interference with a contractual right, which is a tort in the State of Georgia. As no inquiry was made at the evidentiary hearing in this case as to the factual bases of plaintiff's complaint, the court would accept as true and construe liberally this *pro se* complaint. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

█ Just as Count VI is a clear case of a non-violation of Rule 11, Count V of this complaint is definitely a violation of Rule 11. As this court noted in its prior order, "the arguments which plaintiff re-hashes now were arguments he raised in some or all of the other four lawsuits he has filed in this court." A man of Mr. Patterson's education, given a reasonable amount of time in a law library, could determine that once a judgment has been entered one cannot file another lawsuit to object to the conduct of the first. This court's holding in this respect is in line with two other courts which have recently considered this issue. *Williams v. Duckworth,* 617 F.Supp. 597 (N.D.Ind.1985); *Cavallary v. Lakewood Sky Diving Center,* 623 F.Supp. 242 (E.D.N.Y.1985). A "reasonable inquiry" into the law would have told Mr. Patterson that he could not maintain Count V of this complaint. Courts have a right to expect *pro se* plaintiffs to find clearly settled law which goes directly against them. *Snyder v. IRS,* 596 F.Supp. 240 (N.D.Ind. 1984). *See also Peth v. Breitzmann,* 611 F.Supp. 50 (E.D.Wis.1985). More than a mere belief that one has a cause of action is necessary in order to satisfy the requirements of Rule 11. *Williams v. Duckworth, supra; Pawlowske v. Chrysler Cor-*

*poration, supra.* The court concludes that Mr. Patterson's filing of Count V of this complaint was a violation of Rule 11.

 The most difficult question for this court to resolve is whether, in filing Count III of this complaint, the plaintiff violated Rule 11. The court's conclusion was that the plaintiff had failed to make out an antitrust claim in Count III because he alleged no antitrust-type injury as that term has been defined in case law. Mr. Patterson testified at the evidentiary hearing held in this case that he went to this court's library and the library for the United States Court of Appeals for the Eleventh Circuit to look at antitrust law before filing this complaint. Antitrust is one of the most complex areas of the law, and probably the one area where the judicial gloss is as or more important than the actual wording of the statutes. Count III, liberally construed, alleges that the defendants in this case conspired to "boycott" Mr. Patterson by not providing him legal services. The specific wording of the complaint is that the defendants "have engaged in a combination, conspiracy, unlawful agreement and understanding among and between themselves in unreasonable restraint of interstate commerce and trade in the supply of legal services and general representation of parties to legal proceedings and have in effect boycotted [plaintiff] Patterson...." Complaint, ¶ 57. The results of plaintiff's efforts in the library are apparent in this paragraph of the complaint. The plaintiff has taken the language of the statute itself, and has apparently located some of the cases which deal with the topic of boycotts and concerted refusals to deal as constituting restraints of trade.

In short, the plaintiff conducted the kind of inquiry any layman with his education would have conducted. Like most laymen, he apparently operated from the notion that if people concertedly refuse to do business with one, they have monopolized and are subject to an antitrust action. The language of the statute and the language used in the boycott cases would tend to confirm this impression. It would take a trained legal mind to understand that even if a person is injured by the fact that someone will not do business with him, he cannot bring an antitrust action unless there is an "antitrust injury" as defined by the case law. The court cannot say that the research which plaintiff conducted and the conclusions which he drew do not constitute a "reasonable inquiry" within the meaning of Rule 11.

From the foregoing, the court concludes that plaintiff Patterson has violated Rule 11 of the *Federal Rules of Civil Procedure* by filing a complaint which contained Count V. None of the remainder of the complaint has been shown to have been filed in violation of the rule. The court determines the appropriate sanction to be an award of the attorney's fees generated by defendants in responding to Count V of the complaint, and Count V of the complaint alone. The presentation made by counsel for defendants is not allocated as between the different counts, and the court cannot determine from the material currently of record the reasonable attorney's fees and expenses generated in replying to Count V of the complaint. The court will award the defendants those reasonable attorney's fees incurred in researching and preparing a response to Count V of the complaint. The defendants are DIRECTED to file, within fifteen (15) days from the date of receipt of this order, affidavits and a memorandum of law to support, giving consideration to *Johnson v. Georgia Highway Express, supra,* an explanation of their attorney's fees as specified herein. Once the defendants have filed their affidavits and brief, the plaintiff may have ten (10) days from the date of receipt of that pleading to file any objections to the reasonableness of the fees requested, or to pay them. If no objection is filed and the fees are not paid within that time, the defendants may move for an appropriate sanction.

For the foregoing reasons, defendants' motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure is

GRANTED IN PART and DENIED IN PART. The parties are DIRECTED to take such actions as are specified hereinabove.