EASTWAY CONSTRUCTION CORP., George Jaffee, Irving H. Kanarek, and Robert Jacobs, Plaintiffs-Appellees,

v.

The CITY OF NEW YORK, Nathan Leventhal, individually and as Deputy Mayor of the City of New York, Anthony G. Gliedman, individually and as Commissioner of the New York City Department of Housing Preservation and Development, Charles Reiss, individually and as Deputy Commissioner of the New York City Office of Development, Defendants-Appellants, _

and

The Community Preservation Corporation, Michael Lappin, individually and as President of the Community Preservation Corporation, John Does one through fifty, and Chemical Bank, N.A., Defendants.

No. 249, Docket 86-7504.

United States Court of Appeals, Second Circuit.

Argued Oct. 22, 1986.

Decided June 8, 1987.

Fred Kolikoff, New York City (Frederick A.O. Schwarz, Jr., Corp. Counsel, Edward F.X. Hart, John P. Woods, New York City, on brief), for defendants-appellants.

James M. LaRossa, New York City (John W. Mitchell, Karen F. Silverman, LaRossa, Mitchell & Ross, New York City, on brief), for plaintiffs-appellees.

Before KAUFMAN, NEWMAN, and PRATT, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

In *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985) (*"Eastway I"*), a panel of this Court determined that the prevailing municipal defendants should receive an award of "a reasonable attorney's fee" and remanded the case for the determination of the appropriate amount. On remand, Chief Judge Weinstein concluded that, although the lodestar amount of a fee based on the hours reasonably expended by defendants' counsel and the market rate for their services was $52,912.50, the fee to be awarded would be $1,000. 637 F.Supp. 558 (E.D.N.Y.1986). We have concluded that the award falls below even the range within which a district judge may exercise his considerable discretion in such matters, and we therefore modify the award to the amount at the lower limit of the range appropriate for this case, $10,000.

The circumstances of the litigation are fully set forth in our prior opinion and the opinion of the District Court on remand. Suffice it to recount here only that the litigation involved a civil rights claim and an antitrust claim, both of which were determined in *Eastway I* to be frivolous, thereby creating liability for an award of a reasonable attorney's fee to the municipal defendants under both 42 U.S.C. § 1988 (1982) and Rule 11 of the Federal Rules of Civil Procedure. The defendants have returned to this Court with two objections to the fee award made by the District Court. First, they contend that it was an abuse of discretion to award anything less than the full lodestar amount. Second, they urge that the appropriate award, in whatever amount, should not have been imposed solely on the plaintiffs but should have been imposed upon their counsel and perhaps also upon the plaintiffs.

1. The Amount of the Fee Award

We recognized in *Eastway I* that "the district courts retain broad discretion in fashioning sanctions, and apportioning fees

between attorney and client." 762 F.2d at 254 n. 7. The "specifics" of an attorney's fee award, we observed, would be reviewed under an " 'abuse of discretion' standard." *Id.*

It is arguable that the discretion of district judges under Rule 11 should focus primarily if not exclusively upon the choice of sanctions that might be selected after a court has determined that the Rule has been violated. Under this view, once the sanction of a reasonable attorney's fee has been chosen, the amount of that fee should be determined by the lodestar method, now commonly used in determining a reasonable fee appropriate for a prevailing plaintiff under section 1988. The opposing view proceeds from the fact that an award of attorney's fees to a prevailing defendant, under either section 1988 or Rule 11, serves not only as compensation for the defendant but also as a sanction against the plaintiff and, sometimes under Rule 11, against his attorney. It is of the essence of decision-making with regard to sanctions that their severity be carefully calibrated by those entrusted with the responsibility for imposing them. Though some discretion is always exercised in selecting from among the sanctions available under Rule 11, use of the lodestar amount whenever a court elects to award a defendant an attorney's fee might lead some judges to impose an excessive sanction upon some plaintiffs and might inhibit other judges from ever selecting an attorney's fee as the appropriate sanction.

Each of these opposing views has force, and, were the slate clean, we would have to assess them with some care. Indeed, one member of the panel, Judge Pratt, holds the view that an attorney's fee, whenever awarded to a prevailing defendant, should normally be the lodestar amount. But a majority of the panel is persuaded that however we might weigh the competing considerations were we formulating Rule 11, the course of the law concerning use of attorney's fees as one of an array of sanctions against frivolous litigation has recognized that a lodestar amount need not be routinely awarded.

In *Faraci v. Hickey-Freeman Co.*, 607 F.2d 1025 (2d Cir.1979), we applied a flexible approach to a defendant's fee award under the fee-shifting provision of Title VII, 42 U.S.C. § 2000e-5(k), a provision we have construed to authorize a defendant's fee award where the plaintiff's claim is frivolous. *Carrion v. Yeshiva University*, 535 F.2d 722, 727 (2d Cir.1976). *See Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). The standards for awarding fees to prevailing defendants under Title VII and section 1988 are the same. *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980). In *Faraci*, the defendant's legal fees amounted to $11,500. The District Judge exercised his discretion to allow only $2,500. On appeal, we concluded that under all the circumstances a fee award of only $200 was appropriate. *See also Carrion v. Yeshiva University, supra*, 535 F.2d at 728 (defendant "certainly not made whole" by fee award of $5,000). We have also awarded prevailing defendants less than the lodestar amount of a legal fee in exercising our authority under Rule 38 of the Federal Rules of Appellate Procedure in determining what amount of legal fees are to be awarded as a sanction for a frivolous appeal. *See, e.g., United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 495 (2d Cir.) (double costs plus $500 attorney's fee), *cert. denied*, 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983); *In re Hartford Textile Corp.*, 659 F.2d 299, 306 (2d Cir. 1981) (double costs plus $5,000 attorney's fee), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982).

The case law under Rule 11 also reflects the exercise of discretion to award only that portion of a defendant's attorney's fee thought reasonable to serve the sanctioning purpose of the Rule. *E.g., Nixon v. Individual Head of St. Joseph Mortgage Co., Inc.*, 612 F.Supp. 253, 256 (N.D.Ind. 1985) ($250 for each of defendants' two attorneys), *aff'd*, 787 F.2d 595 (7th Cir. 1986); *Fox v. Boucher*, 603 F.Supp. 216, 220 (S.D.N.Y.1985) ($3,000), *aff'd*, 794 F.2d 34 (2d Cir.1986); *Index Fund v. Hagopian*, 107 F.R.D. 95, 99 (S.D.N.Y.1985) ($100);

*Weisman v. Rivlin*, 598 F.Supp. 724, 726–27 (D.D.C.1984) ($200); *Heimbaugh v. City of San Francisco*, 591 F.Supp. 1573, 1277 (N.D.Cal.1984) ($50). *See also* S.M. Kassin, *An Empirical Study of Rule 11 Sanctions* 6, n. 20, and accompanying text (Federal Judicial Center 1985) (reporting 65 cases in which "some portion" of defendant's attorney's fees has been awarded under Rule 11). Fees far below the lodestar amount have frequently been awarded to prevailing defendants under section 1988. *E.g., Kostiuk v. Town of Riverhead*, 570 F.Supp. 603, 612–13 n. 4 (E.D.N.Y.1983) ($250).

To recognize that district judges have discretion in determining the amount of a defendant's fee that would be reasonable to serve as a sanction is not, however, to forgo traditional appellate review of the exercise of such discretion. All discretion is to be exercised within reasonable limits. The concept of discretion implies that a decision is lawful at any point within the outer limits of the range of choices appropriate to the issue at hand; at the same time, a decision outside those limits exceeds or, as it is infelicitously said, "abuses" allowable discretion. *See Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 974 (2d Cir.1987); Friendly, *Indiscretion About Discretion*, 31 Emory L. Rev. 747, 773–78 (1982).

▬ In this case, Chief Judge Weinstein has thoughtfully considered a variety of factors bearing on the appropriate amount of a fee to be awarded as a sanction. Without necessarily endorsing the pertinence of each factor, we agree with his general conclusion that a fee substantially less than the lodestar amount is permissible. However, discharging our responsibilities to monitor the outer limits of discretion in such matters, we have concluded that the bottom of the range of discretion appropriate to this case is a fee of $10,000. We therefore conclude that the $1,000 awarded by the District Judge must be revised upwards to the lowest point of permissible discretion.

### 2. Allocation of the Fee Award

▬ Section 1988 contemplates fee shifting between parties and makes no provision

for imposing upon plaintiff's counsel the burden of fees awarded to a prevailing defendant. *See Davidson v. Allis-Chalmers Corp.*, 567 F.Supp. 1532, 1537–38 (W.D.Mo.1983). Rule 11, on the other hand, authorizes assessment of a fee against counsel, a party, or both. Upon remand in this case, Chief Judge Weinstein understood *Eastway I* to authorize a fee award to the defendant under Rule 11 only with respect to the defense of the antitrust claim, with a fee award under section 1988 for defense of the civil rights claim. In order to allocate the burden of a fee award between the plaintiffs and their counsel, that understanding of *Eastway I* would have required an initial allocation of the fee according to the time spent defending each claim. The difficulty of making that initial allocation, a difficulty acknowledged by the municipal defendants, persuaded Chief Judge Weinstein "in the interests of efficiency, fairness and policy" to forgo any allocation and impose the fee award solely against the plaintiffs. 637 F.Supp. at 584.

Though some language in *Eastway I* appears to limit the Rule 11 discussion to the antitrust claim, we believe the opinion, read as a whole, authorizes a fee award under Rule 11 with respect to both the civil rights and the antitrust claims. It is therefore unnecessary to allocate the time of defendants' counsel between the two claims. What remains is allocation of the revised fee award of $10,000 between plaintiffs and their counsel. Normally that is a task within the discretion of a district court. There are occasions, however, where reviewing courts resolve issues normally decided by lower courts in order to bring protracted litigation to a close. *See, e.g., Consolo v. Federal Maritime Commission*, 383 U.S. 607, 621, 86 S.Ct. 1018, 1027, 16 L.Ed.2d 131 (1966); *O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951); *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 516 F.2d 172, 186–87 (2d Cir.1975), *rev'd on other grounds*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295, 299 (2d Cir.), *cert. denied*, 404 U.S. 870, 92 S.Ct. 105, 30 L.Ed.2d 114 (1971). This is simply an exercise of an appellate court's authority to "direct the entry of such appropriate judgment ... as may be just under the circumstances." 28 U.S.C. § 2106 (1982). It is also what Holmes called, in a related context, a "concession to the shortness of life." *Reeve v. Dennett*, 145 Mass. 23, 28, 11 N.E. 938, 944 (1887).

We deem it appropriate to resolve the allocation issue. Having examined the parties' contentions, the prior proceedings, and the observations of the District Judge, we have concluded that one half of the fee award should be imposed jointly and severally upon the plaintiffs and one half should be imposed upon plaintiffs' counsel. We also conclude that no other fees are to be awarded with respect to proceedings in either the District Court or this Court, and no appellate costs are to be awarded with respect to this appeal. In short, upon the entry of a judgment in conformity to our mandate, this litigation is ended.

Accordingly, the order of the District Court is modified and the cause remanded with directions to enter an order awarding the municipal defendants legal fees of $10,-000, $5,000 imposed upon the plaintiffs jointly and severally and $5,000 imposed upon plaintiffs' counsel.

GEORGE C. PRATT, Circuit Judge, dissenting:

As intimated in the majority opinion, I do not agree that the amount of "a reasonable attorney's fee" imposed as a sanction under rule 11 should be measured by the severity of an adversary's misconduct. While it is true, as Judge Newman states, we do not have a "clean slate" to write on, this case seemed to present a unique opportunity to wipe clean a slate that should be an embarrassment to all of us and to start building with amended rule 11 a logical, consistent rationale for the new "Era of Sanctions". We should end the misleading practice of justifying what are in reality punitive fines by pretending that they represent attorney's fees. Since I have been unable to persuade my colleagues at this time, however, I shall simply record my

view of the problem for whatever use it may have in the future.

I recognize, as Judge Newman points out, that many courts, our own included, have over the years imposed sanctions of varying amounts under the rubric of "reasonable attorney's fees", but without any pretense at determining what compensation for the attorney of the wronged party would be reasonable. However tolerable that kind of approach may have been in former years when sanctions were relatively uncommon, I think it now not only disserves both the language and intent of amended rule 11, but also perpetuates disparities in sanctions, encourages arbitrariness in the day-to-day operations of some of our district courts, and runs counter to logic.

In reaching what is essentially a policy-based decision, the majority leans heavily on the punitive aspect of rule 11 sanctions and the need for judicial discretion in calibrating the severity of a penalty; in doing so, however, the majority neglects the second purpose of rule 11: to provide restitution to the victim of the sanctioned conduct. It seems to me that when "a reasonable attorney's fee" is to be awarded as an appropriate sanction under rule 11, it should, in the absence of a special circumstance, such as an inability to pay that would make the award unjust, be objectively quantified following the standard approach—the lodestar method that has already been developed for determining "a reasonable attorney's fee" to a prevailing plaintiff under 42 U.S.C. § 1988.

Amended rule 11 was intended to redress two related problems under its overarching goal of eliminating improper litigation tactics. *See* Schwarzer, *Sanctions Under The New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 201 (1985). The first aim was to deter abusive litigants; indeed, "[t]he word 'sanctions' in the caption * * * stresses a deterrent orientation in dealing with improper pleadings, motions or other papers." Fed.R.Civ.P. 11 advisory committee notes. Rule 11 sanctions are not, however, meant solely to deter those who would abuse our federal system of justice; they

serve also to compensate the victims of that abuse. *See Taylor v. Prudential-Bache Securities, Inc.,* 594 F.Supp. 226, 229 (N.D.N.Y.) (Miner, J.), *aff'd mem.,* 751 F.2d 371 (2d Cir.1984). This second aspect of rule 11 is clear from the advisory committee's recognition that the inclusion of a sanctioning power in amended rule 11 sought to "build[ ] upon and expand[ ] the *equitable* doctrine permitting the court to award expenses, including attorney's fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation." Fed.R.Civ.P. 11 advisory committee notes (emphasis added); *see also Patterson v. Aiken,* 111 F.R.D. 354, 356 (N.D.Ga. 1986).

In plain language rule 11 establishes that an appropriate "sanction" and "a reasonable attorney's fee" are not synonymous, as the rule provides for "an appropriate sanction * * * *which may include* * * * a reasonable attorney's fee". Fed.R.Civ.P. 11 (emphasis added). Thus, congress intended to make available in the universe of sanctions an attorney's fee as but one example of a wide array of possible monetary and nonmonetary sanctions.

Some examples of nonmonetary sanctions might include requiring continuing legal education course work in areas of acute deficiency; in extreme cases, recommending disciplinary action by the bar; or something as simple as a judicial reprimand, whether rendered in private, in open court, or in a published opinion. Should a district judge believe that a very modest monetary sanction is appropriate under the circumstances, she might, for example, award single, double, or triple costs. Given a different setting, the judge may deem it fitting to award full restitution for the misconduct, *i.e.,* "a reasonable attorney's fee".

In addition, while not specifically mentioned in rule 11, the possibility exists that a sum of money unrelated to any such objective figure as expenses or an attorney's fee—*i.e.,* a penalty in the nature of a fine—could be imposed. Should such a fine be deemed appropriate, the district judge also would have to determine whether the money should be paid into the registry of

the court, *see, e.g., Dore v. Schultz,* 582 F.Supp. 154, 158 (S.D.N.Y.1984), or to the opposing party. Of course, the court would realize that while both options would punish the offending party, only the latter option would also help to compensate the party harmed by the improper conduct.

The phrase "a reasonable attorney's fee" in rule 11 should be interpreted in the same manner as the same phrase in section 1988. While it is true that the policy underlying section 1988 is to encourage meritorious civil rights litigation, and that rule 11 was designed to discourage improper litigation in general, this difference in goals does not suggest that "a reasonable attorney's fee" should be calculated differently under the two provisions. Both provisions allow an attorney's fee as an enforcement tool for attaining their respective goals, and both provisions seek to shift to the party or attorney whose conduct imposed the financial burden the cost of an attorney's fee that, ideally, would never have been incurred. This fee-shifting tool, which is described in the two provisions in identical language, should not be disparately defined simply because the rules it promotes serve different policies. If the lodestar is the appropriate presumptive measure of "a reasonable attorney's fee" for section 1988, there is no reason it should not be in the rule 11 context as well. Moreover, because in the context of this case the attorney's fee is being awarded to prevailing defendants rather than prevailing plaintiffs, section 1988 and rule 11 here serve the same goal—the deterring of improper litigation.

I recognize that accepting my view of rule 11 would mark a substantial departure from the past judicial practice of imposing sanctions in arbitrarily determined amounts verbally disguised as "attorney's fees", and I can't be sure that recognizing such sanctions for what they are—fines— would have changed the result in any of the many cases cited in the majority opinion. I am confident, however, that if we were to interpret the statutory term "reasonable attorney's fees" to mean amounts that represent the reasonable cost of an attorney's services, we would begin to bring the full dimensions of the problem into the open, we would force district judges to actively consider other types of sanctions, including restitution and various nonmonetary impositions, and we would help reduce the apparent disparities, even capriciousness, that now seem to characterize much of rule 11 jurisprudence.

I therefore cannot agree with the majority opinion because it fails to require the rule 11 sanction of a "reasonable attorney's fee" to be calculated with reference to the actual cost burden on defendant that was inflicted by plaintiff's misconduct. To dispose of this appeal, I would direct that the sanction award be increased from the $1,000 found by the district court to constitute "a reasonable attorney's fee" to the $52,912.50 established by the record to be a reasonable attorney's fee under the lodestar approach, and remand to the district court for the limited purposes of (1) apportioning the sanction between plaintiffs and their counsel and (2) determining whether the obligation of either should be adjusted for financial inability. To the extent that the majority opinion fails to do this, I dissent.

I agree with the majority that the district court erred in determining that "a reasonable attorney's fee" in this case is only $1,000; such a determination was arbitrary, capricious, and contrary to the intent of rule 11. I cannot, however, accept the $10,000 figure selected by the majority; while closer in dollar amount to a proper sanction, it, too, does not constitute "a reasonable attorney's fee" under rule 11 and is therefore no less arbitrary in principle than the amount selected by the district court.