**Ronnie SELBST, Plaintiff,**

v.

**TOUCHE ROSS & CO., Defendant.**

**No. 84 CIV. 1067 (PKL).**

United States District Court,
S.D. New York.

Aug. 31, 1987.

Shapiro, Shiff, Beilly, Rosenberg & Fox, New York City, for plaintiff; Lewis Rosenberg, of counsel.

Shea & Gould, New York City, for defendant; John B. Grant, Jr., of counsel.

## OPINION & ORDER

LEISURE, District Judge:

Touche Ross & Co. ("Touche Ross") moves for attorney's fees incurred in defending against plaintiff's claim for sex discrimination under Title VII of the Civil Rights Act and under the New York Human Rights Law. The case was tried before a jury, concluding on December 24, 1986. The jury rendered a verdict for de-fendant on the state law claim. The Court subsequently found that the defendant was entitled to judgment dismissing the Title VII claims with prejudice.

### Discussion

Defendant seeks an award of attorney's fees pursuant to Section 706(k) of Title VII, 42 U.S.C. § 2000e–5(k) and Fed.R.Civ.P. 11. In *Christiansburg Garment Co. v. E.E. O.C.*, 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978), the Supreme Court held that, under § 706(k), a Title VII plaintiff "should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." The Court warned that a district court must "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421–22, 98 S.Ct. at 700. It recognized that "the course of litigation is rarely predictable" and "[d]ecisive facts may not emerge until discovery or trial." *Id.* at 422, 98 S.Ct. at 700. *See also Bonar v. Ambach*, 771 F.2d 14, 20 (2d Cir.1985) (remanding for consideration of plaintiff's continued litigation under *Christiansburg Garment* standard); *Lane v. Sotheby Parke Bernet, Inc.*, 758 F.2d 71, 73 (2d Cir.1985) (same). "Under Rule 11 sanctions *must* be awarded when a competent attorney could not have formed a belief after reasonable inquiry that the claims were 'warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.'" *Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281, 1288 (2d Cir.1986) (emphasis in original).

Defendant contends that plaintiff's claim was without foundation, frivolous and unreasonable from the outset. Alternatively, defendant contends that plaintiff continued to litigate after it became obvious that that there was no foundation for: (1) plaintiff's assertion that her pregnancy had caused

her discharge by defendant; (2) plaintiff's claim for $2 million in "mental anguish" damages; and (3) her persistence in pressing her claims at trial after December 16 or 18, 1986.

### A. Plaintiff's Pregnancy Claim

Plaintiff attempted to prove at trial that she had been fired because of her pregnancy, despite her knowledge from the beginning of the case that this claim was without foundation. Plaintiff's EEOC claim and her complaint in this action (the "Complaint") stated that plaintiff advised James Carey, her supervisor at Touche Ross, that she believed she was pregnant only after he had first informed plaintiff of her discharge. Affidavit of John B. Grant, Jr., Esq., sworn to on May 1, 1987 (the "Grant Aff."), Exh. B & Exh. C at ¶¶ 13–16. At her deposition in August 1984, plaintiff testified that she had been only one week pregnant at the time of her termination interview with Carey, Grant Aff., Exh. E at 127–28, and that no reason existed to believe Carey was aware of her suspected pregnancy before he decided to fire her, *id.* at 64, 141–42.

■ Despite plaintiff's grudging concession at her deposition that Carey did not know of her pregnancy when he fired her, this claim was resurrected as a central theme of plaintiff's case at trial. Plaintiff attempted to prove that her supervisor may have known of her pregnancy, despite his unequivocal denial, by asserting that her request for information on maternity benefits from the Touche Ross personnel department would have alerted Carey to her plans. Plaintiff, however, introduced no evidence to demonstrate any such link, and defendant's personnel director testified that Touche Ross had a policy prohibiting any such communication from the personnel department to an employee's supervisor. Accordingly, plaintiff's continued assertion of her pregnancy claim was without foundation.

### B. Plaintiff's Mental Anguish Claim

The Complaint asserted a claim for "actual damages resulting from mental an-

guish" in the amount of $2,000,000. *See* Grant Aff., Exh. C at 6. Defendant argues that plaintiff should have been aware at the outset that "New York law requires more evidence to prove such a claim than plaintiff could conceivably muster...." Defendant's Memorandum of Law at 11.

■ Under New York law, in order to recover damages for mental anguish in a discrimination case, a plaintiff must present: (1) credible testimony with respect to the claimed mental anguish; and (2) corroboration, either by competent medical proof or by the circumstances of the case which afford some guarantee of the genuineness of the claim. *See Batavia Lodge v. New York State Division of Human Rights,* 35 N.Y.2d 143, 359 N.Y.S.2d 25, 27, 316 N.E.2d 318, 319 (1974) (approving dissenting opinion in Appellate Division); *121–129 Broadway Realty Corp. v. New York State Division of Human Rights,* 49 A.D.2d 422, 376 N.Y.S.2d 17, 19 (App.Div. 1975); *Cullen v. Nassau County Civil Service Commission,* 53 N.Y.2d 492, 442 N.Y.S.2d 470, 473, 425 N.E.2d 858, 861 (1981). In *Batavia Lodge,* the complainants had been refused service at the bar in defendant's place of public accomodation. There was evidence that the complainants had been angered, embarrassed and humiliated by the incident, and that some had experienced headaches thereafter. Moreover, corroboration of the complainants' mental anguish was provided by each other's testimony. *See Batavia Lodge v. New York State Division of Human Rights,* 43 A.D.2d 807, 350 N.Y.S.2d 273, 279 (App. Div.1973) (dissenting opinion). Accordingly, the Court of Appeals upheld an award of $250 in damages to each of the complainants. 359 N.Y.S.2d at 26, 28, 316 N.E.2d at 319, 320. Similarly, in *Broadway Realty,* plaintiff testified that as a result of discrimination she felt very hurt and mistreated, and that she became physically ill and had to go home. 376 N.Y.S.2d at 19. The Appellate Division credited this testimony, but reduced the award for mental anguish from $500 to $100. *Id. See also Catalina Beach Club v. State Division of Human*

*Rights*, 95 A.D.2d 766, 463 N.Y.S.2d 244, 246 (App.Div.1983) (considering evidence of "blatant" discrimination and severe injuries).

Plaintiff's evidence of mental anguish fell far short of any of the above cases. As she admitted at her deposition, plaintiff suffered no public humiliation of any kind because her termination interview with Carey was conducted privately. Moreover, plaintiff suffered no physical reaction and did not consult with any physician or psychiatrist as a result of her termination. Grant Aff., Exh. E at 148–51. Thus, plaintiff had no corroborating evidence and could point to no circumstances affording a guarantee of genuineness with regard to a claim of *any* damages for mental anguish. Moreover, these facts were all within plaintiff's knowledge at the outset. Accordingly, the Complaint's allegation of damages for mental anguish was frivolous, and in violation of Rule 11. *See Stiefvater Real Estate, Inc. v. Hinsdale*, 812 F.2d 805, 809 (2d Cir.1987) ("[R]ule 11 deals exclusively with 'the certification flowing from the signature to a pleading, motion or other paper in a lawsuit.' ").

### C. Continuation of Trial

On two occasions during the trial, the Court informed plaintiff and her counsel, outside of the presence of the jury, that she stood in jeopardy of a fee award to defendant because of the apparent weakness of her case. Despite these warnings, plaintiff pressed ahead. As a result, the Court is now required to determine, without using hindsight, whether plaintiff continued to litigate her Title VII claim after it "clearly" became "frivolous, unreasonable, or groundless." *See Christiansburg Garment*, 434 U.S. at 422, 98 S.Ct. at 701. The

Court concludes that, certainly after the fourth day of trial, December 18, 1986, plaintiff's continued litigation of her claim was unreasonable and likely in bad faith.[2]

Plaintiff's own case demonstrated that: plaintiff had engaged in a lengthy dispute with Carey as the result of his decision to cut her bonus by $1000; that this reduction was not itself discriminatory because Carey had made the same reduction in the salary of a male manager in plaintiff's department; that this dispute caused friction between Carey and plaintiff; that Carey told plaintiff, in response to her complaints about lack of participation in new business development, that she was not a team player because she refused to drop the bonus issue; that Carey thereafter included plaintiff in new business activities; that plaintiff was so displeased with Carey's management style that she began looking for a new job in September 1981; that plaintiff's prior supervisor had treated her properly and without any evidence of discrimination. Plaintiff's primary focus at trial was on the assertion that Carey, her subsequent supervisor, had fired her because of her sex. Yet plaintiff could point to no objective evidence of this assertion. No comments had been made by Carey suggesting discrimination on his part, no documents existed which demonstrated any unequal treatment within plaintiff's department between males and females, and no witness other than plaintiff testified to any alleged discrimination.[3]

### D. Amount of Sanction

The Court of Appeals for the Second Circuit has recently held that a district court need not award a defendant entitled to an award of fees, pursuant to Title VII, § 1988, or Rule 11, the full amount of a fee

---

**2.** While the Court may award defendant its fees even though plaintiff's claim was "not brought in subjective bad faith," a finding that plaintiff brought or continued her claim in bad faith provides "an even stronger basis for charging [her] with the attorney's fees incurred by the defense." 434 U.S. at 421–22, 98 S.Ct. at 700–01.

**3.** Counsel for plaintiff argues that the inclusion of an instruction on punitive damages in the Court's charge to the jury on the state law claim

demonstrates that plaintiff's case was sufficiently well-established to permit an award of punitive damages against defendant. Affidavit of Lewis Rosenberg, Esq., sworn to on June 11, 1987, at ¶¶ 150–51. In fact, the inclusion of such a charge was a mere precaution to insure that the jury would be fully instructed in the unlikely event that it reached the issue of punitive damages.

based on the hours reasonably expended by counsel and the market rate for their services. *Eastway Construction Corp. v. City of New York*, 821 F.2d 121, 122–23 (2d Cir.1987). The Court stated that while "district judges have discretion in determining the amount of a defendant's fee that would be reasonable to serve as a sanction," such discretion must "be exercised within reasonable limits." *Id.* at 123. *See also Johnson v. New York City Transit Authority*, 823 F.2d 31 (2d Cir.1987) (District Court may consider "various mitigating factors bearing on the degree of sanction that is warranted."); *Faraci v. Hickey-Freeman Co.*, 607 F.2d 1025, 1028 (2d Cir.1979) ("[F]ee awards are at bottom an equitable matter....").[4] Accordingly, the *Eastway* Court increased Judge Weinstein's award of $1000 to "the lower limit of the range appropriate for this case, $10,-000." 821 F.2d at 122. Judge Weinstein had determined that the total amount of a fee based on the hours reasonably expended by defendants' counsel and the market rate for their services was $52,912. *Id.*

In this case, the total fees incurred by defendant from the inception of the action through the completion of trial amount to $49,595. Defendant estimated that plaintiff's pregnancy claim accounted for five percent of the total, or the sum of $2,480, and that plaintiff's claim for mental anguish damages accounted for the sum of $1,937. Grant Aff. at 13–14.[5] The continuation of the trial after December 18, 1986, resulted in fees of $7,677. *Id.* at 15. An

award of fees is warranted in this case due to plaintiff's assertion of her pregnancy and mental anguish claims as well as her continuation of the litigation after her Title VII action "clearly" became "unreasonable" on December 18, 1986. *Christiansburg Garment*, 434 U.S. at 422, 98 S.Ct. at 700. The Court is convinced, however, that an award of the entire amount of the market value of the fees reasonably incurred is unnecessary in the circumstances of this case "to serve the sanctioning purpose" of Rule 11 and § 706(k). *Eastway Construction*, 821 F.2d at 123.

Accordingly, defendant is hereby awarded legal fees of $6,000, $5,000 imposed on plaintiff pursuant to § 706(k) and Rule 11, and $1,000 imposed on plaintiff's counsel pursuant to Rule 11.[6] Defendant is directed to submit a judgment in conformity with this opinion within 10 days from the date hereof.

SO ORDERED.

---

4. Unlike the plaintiff in *Faraci*, 607 F.2d at 1028, plaintiff here has made no claim of poverty in opposition to the motion for a fee award. Moreover, the evidence adduced at trial regarding plaintiff's income as a professional actuary would undermine any such claim.

5. *See also* Grant Aff., Exh. G. The billing rates reflected therein are those which Shea & Gould normally charges its clients. Grant Aff. at ¶ 17. At the Court's request, defendant's counsel also submitted contemporaneous time records supporting the summary presented in Exh. G. *See Soliman v. Ebasco Services Inc.*, 822 F.2d 320, 323 (2d Cir.1987).

6. Based on its observation of plaintiff during the trial, her testimony, and the other circum-

stances of this case, the Court is of the opinion that the overriding reason for the continuation of this litigation to its conclusion was plaintiff's stubborn refusal to acknowledge that her own shortcomings caused her termination. *See* Grant Aff., Exh. A (Findings of Fact and Conclusions of Law at 4–6).

The award against plaintiff's counsel stems from the claim for damages for mental anguishes in the Complaint, and from the pregnancy claim in the pretrial order and trial memorandum. Section 706(k), like § 1988, makes no provision for imposing on plaintiff's counsel the burden of fees awarded to a prevailing defendant. *See Eastway Construction Co.*, 821 F.2d at 123–24. Moreover, Rule 11 "imposes no continuing duty on the parties or their attorneys." *Hinsdale*, 812 F.2d at 809.